IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL LA HART, *et al.*, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | |
| SUNOCO PIPELINE L.P., *et al.*, | : : | NO. 25-2072 |
| Defendants. | : | |

## MEMORANDUM

**Perez, J.**                                                                                               **June 16, 2025**

Plaintiffs filed this environmental class action in the Philadelphia County Court of Common Pleas, alleging injuries from a petroleum pipeline leak in Bucks County, Pennsylvania. Defendants Sunoco Pipeline L.P. ("Sunoco"), Energy Transfer LP ("Energy Transfer"), and Energy Transfer (R&M) LLC ("R&M") removed the action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Plaintiffs now move to remand, invoking the local controversy exception to CAFA and disputing Defendants' claim that Defendant Energy Transfer (R&M) LLC ("R&M"), a Pennsylvania entity, was fraudulently joined. The Court concludes that Defendants have not met their burden to show fraudulent joinder, and that Plaintiffs have satisfied the criteria for the local controversy exception. Accordingly, the Court grants the motion to remand.

**I.      CASE BACKGROUND**

This case arises from a breach of Defendants' Twin Oaks Pipeline ("Pipeline") in the Mount Eyre Manor residential community in Upper Makefield Township, in Bucks County Pennsylvania.[1] Plaintiffs filed a putative class action on March 27, 2025, in the Philadelphia

---
[1] ECF No. 1-1 at ¶ 9.

County Court of Common Pleas asserting claims for negligence, nuisance, trespass, and strict liability against Defendants Sunoco Pipeline L.P. ("Sunoco"), Energy Transfer LP ("Energy Transfer"), and Energy Transfer (R&M) LLC ("R&M"). Plaintiffs allege that Defendant Energy Transfer, "through its complex network of subsidiaries, limited partnerships, and joint ventures, including [Defendants Sunoco and R&M] owns one of the nation's largest networks of natural gas, crude oil, and petroleum product pipelines."[2] The pipeline leak at issue here has contaminated groundwater, private drinking wells, soil, and air in the community, causing damage to the environment, property values, and health of the residents.[3] Defendants publicly accepted responsibility for the leak and are remediating the affected area.[4] Below is a concise timeline of the events leading to this action and relevant procedural history.

On January 31, 2025, Sunoco identified and reported the pipeline leak to the Pennsylvania Department of Environmental Protection ("PADEP");[5] however, Plaintiffs assert that Defendants had received odor complaints from residents as early as September 2023.[6] On February 1, 2025, Energy Transfer issued a written statement confirming the discovery of the leak.[7] Following confirmation of the leak, Defendants removed and replaced the leaking segment, returned the pipeline to service, and began conducting testing of the water of nearby residences.[8] On February 13, 2025, the Pipeline and Hazardous Materials Safety Administration (PHMSA) issued a Notice of Proposed Safety Order and proposed remedial requirements to Defendants.[9] Defendants

---

[2] *Id.* at ¶ 34.
[3] *Id.* at ¶¶ 3, 5-6, 18-24.
[4] *Id.* at ¶ 244.
[5] ECF No. 24-5 at 2.
[6] ECF No. 1-1 at ¶ 16.
[7] *Id*. at ¶ 132.
[8] *Id.* at ¶¶ 128, 132, 134.
[9] ECF No. 21-3.

submitted a Notice of Intent to Remediate to PADEP on February 13 and, on the same day, formally notified the Township Manager of their remediation efforts.[10]

On February 18, 2025, the PADEP issued a Notice of Violation to Defendants.[11] During a town hall meeting on February 27, an Energy Transfer representative claimed responsibility for the release and apologized.[12] On March 6, 2025, PADEP issued an administrative order to Defendants R&M and Sunoco, requiring a response to the leak and the implementation of certain remedial efforts, including installing point-of-entry treatment systems, preparing daily reports, and providing bottled water.[13] In its administrative order, PADEP "found and determined" that "Energy Transfer (R&M), LLC is a Pennsylvania Business Corporation and . . . is a parent entity of Sunoco," and that R&M, along with [Sunoco] owns and operates the Pipeline at issue in this case.[14] The PADEP Administrative Order required Defendants to file an appeal within 30 days with the Environmental Hearing Board.[15] Defendants declined to file an appeal, but on March 31, a representative of Energy Transfer responded to the administrative order via email, asserting that R&M is not a proper party to the order since R&M does not own or operate the pipeline and has no ownership interest in Sunoco.[16]

On April 24, 2025, Defendants timely removed the action to this Court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), asserting minimal diversity, a putative class exceeding 100 members, and an amount in controversy exceeding $5 million.[17] Defendants also

---

[10] ECF No. 24-2.
[11] ECF No. 21-4.
[12] ECF No. 1-1 at ¶ 164.
[13] Ex. 4, ECF 24-5.
[14] ECF No. 1-1 at ¶ 5.
[15] Ex. 4, ECF 24-5.
[16] Ex. 5, ECF No. 1.
[17] ECF No. 1 at ¶ 22.

assert that R&M was fraudulently joined and should be disregarded for jurisdictional purposes.[18] On May 27, 2025, Plaintiffs filed the instant Motion to Remand, arguing that (1) R&M is a properly joined Pennsylvania defendant,[19] and (2) the case qualifies for the mandatory local controversy exception under CAFA.[20] Plaintiffs alternatively requested limited jurisdictional discovery if the Court determined that factual development was necessary to resolve jurisdiction.[21]

Defendants filed a consolidated opposition brief to the motion to remand on June 10, 2025, along with a declaration asserting that R&M had no operational role in the Pipeline or its breach, and that its inclusion in a PADEP administrative order was erroneous.[22] This matter is now ripe for disposition.[23]

## II.     LEGAL STANDARD

Removal of a civil action from state to federal court is proper only if the action initially could have been brought in federal court. 28 U.S.C. §1441(a). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990). To ascertain jurisdiction, individuals are deemed to be citizens of the state wherein they reside, *Swiger v. Allegheny Energy, Inc.*, 540

---

[18] *Id.* at ¶ 55.
[19] ECF No. 19-1 at 11.
[20] *Id.*; *see also* 28 U.S.C. § 1332(d)(4)(A).
[21] ECF No. 19 at 1.
[22] ECF No. 24.
[23] Plaintiffs filed a Motion for Preliminary Injunction on June 9, 2025, for which this Court promptly scheduled an evidentiary hearing. *See* ECF No. 22. However, before proceeding to the merits, this Court must assess subject matter jurisdiction because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869) (internal quotations omitted)). It is a fundamental principle of American jurisprudence that jurisdiction is the first and foremost question resolved by the court. *Id.* at 94. As set forth in this memorandum, the Court lacks subject matter jurisdiction. The evidentiary hearing was therefore cancelled.

F.3d 179, 181 (3d Cir. 2008), while a corporation is deemed a citizen of every state in which it has been incorporated and where it has its principal place of business.  28 U.S.C. §1332(c)(1).

A district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). The removing party carries the "heavy burden of persuasion," and courts must resolve all doubts in favor of remand. *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010, 1012 n.6 (3d Cir. 1987) (citation omitted).

## IV.  FRAUDULENT JOINDER

Defendants, who removed this action pursuant to CAFA, argue that Defendant R&M, a Pennsylvania entity, was fraudulently joined by Plaintiffs in their initial state action in an effort to purposely destroy federal diversity jurisdiction. There is no dispute here over the actual citizenship of any of the parties for purposes of federal jurisdiction. Rather, the disagreement centers on whether R&M's Pennsylvania citizenship should even be considered at all—which hinges on the issue of fraudulent joinder rather that its underlying state of citizenship.

Fraudulent joinder is an exception to the complete diversity requirement for removal, allowing federal courts to assume jurisdiction over cases containing nondiverse defendants where it can be shown that they were joined "solely to defeat diversity jurisdiction." *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). Joinder is fraudulent "if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* at 216 (quotations omitted). A claim is colorable if it is not "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992). The removing party asserting fraudulent joinder has a "heavy burden of persuasion." *Bate v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). In

deciding whether a defendant has demonstrated fraud, district courts must "focus on the plaintiff's complaint at the time the petition for removal was filed," accept the complaint's factual allegations as true, and resolve uncertainties about the controlling substantive law in the plaintiff's favor. *Id.* at 851–52 (quotations omitted). Joinder is proper "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Id.* at 851 (quotations omitted).

A court should not find a joinder fraudulent "[s]imply because [it] come[s] to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action." *Kallman v. Aronchick*, 2013 WL 5964444, at *5 (E.D. Pa. Nov. 8, 2013) (quoting *Lyall v. Airtran Airlines, Inc.,* 109 F. Supp. 2d 365, 367–68 (E.D. Pa. 2000)). Rather, a finding of fraudulent joinder is usually reserved for situations where recovery from the non-diverse defendant is a clear legal impossibility. *West v. Marriott Hotel Servs., Inc.*, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010) (quotations omitted). "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." *Id.*; *see Boyer*, 913 F.2d at 111.

Defendants argue that Plaintiffs joined R&M solely to defeat diversity and that R&M's inclusion in the PADEP Administrative Order was a "scrivener's error."[24] They support this assertion with a declaration stating R&M has no involvement with the Pipeline. However, the PADEP's March 2025 Administrative Order—issued to Sunoco and R&M—explicitly directed both companies to remediate the pipeline release, identifying R&M as a parent of Sunoco. That Order became final under Pennsylvania law after R&M and Sunoco declined to appeal it. *See* 35 P.S. § 7514(c). Defendants' characterization of the PADEP's findings as a clerical mistake is not

---

[24] ECF No. 24 at 5.

dispositive at this stage. Even if disputed, the order and the absence of appeal create a plausible basis for the claim that R&M was legally responsible or operationally involved in the events surrounding this litigation. The Court must resolve all doubts in favor of remand when evaluating fraudulent joinder. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992). Because there is a reasonable basis in fact and law for Plaintiffs' claims against R&M, the Court finds that R&M was not fraudulently joined.

## V.    THE LOCAL CONTROVERSY EXCEPTION TO CAFA

Having found that R&M was not fraudulently joined, the Court turns to whether an exception to CAFA applies. CAFA provides a broader avenue for removal of a case than traditional diversity jurisdiction. Relaxing the diversity of citizenship requirement to allow minimal diversity to suffice, CAFA grants federal courts subject-matter jurisdiction over state-filed class action suits where: (1) the putative class exceeds 100 members; (2) the amount in controversy exceeds $5 million, and (3) any class member is a citizen of a different state than any defendant. *See* 28 U.S.C. § 1332(d)(2); *Vodenichar v. Halcon Energy Properties*, 733 F.3d 497 (3d Cir. 2013). There is no dispute here that this matter fits the above criteria. However, CAFA jurisdiction is subject to the local controversy exception, under which federal district courts must decline jurisdiction if:

> (I)   greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II)  at least 1 defendant is a defendant—
>
>> (aa)   from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb)   whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>
>> (cc)   who is a citizen of the State in which the action was originally filed; and

> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

> A party seeking to invoke this exception must show, therefore, that:
>
> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

*Vodenichar*, 733 F.3d at 506–07. As the moving party, Plaintiffs must demonstrate that the exception applies by a preponderance of the evidence. *Id*. at 503. "Even if a federal court has jurisdiction under CAFA, it must decline to exercise that jurisdiction if the class action involves a local controversy." *McLaren v. UPS Store Inc,* 32 F.4th 232, 241 (3d Cir. 2022). The local controversy exception "applies only where at least one defendant" is a citizen of the State in which the action was originally filed." *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 822 (3d Cir. 2023).

Here, there is no dispute that: the entire putative class is comprised of citizens of Pennsylvania; Defendant R&M is a citizen of Pennsylvania; Plaintiffs are seeking significant relief from R&M; the injuries caused by the pipeline leak occurred in Pennsylvania; and no other class actions asserting the same have been filed in the past three years. The question for the Court is whether Plaintiffs have shown that R&M forms a "significant basis" for their claims.

The Third Circuit has held that satisfying the "significant basis" provision, 28 U.S.C. § 1332(d)(4)(A)(i)(II), requires a "substantive analysis comparing the local defendant's conduct alleged to the alleged conduct of all defendants." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009).

This Court finds that, in the absence of any formal appeal by Defendants, the PADEP Administrative Order, which explicitly names R&M and directs it to undertake remedial action for the leak, satisfies the significant basis provision. The PADEP's directive to R&M to take active steps to correct the leak, not merely informational or reporting duties, suggests that PADEP viewed it as operationally or corporately responsible and not some nominal party. R&M was given notice of its right to appeal or challenge the administrative order, and its failure to do so renders it final and binding under Pennsylvania law. Defendants' arguments do nothing more than raise a factual dispute, not a jurisdictional bar. This Court cannot resolve factual disputes in Defendants' favor at the remand stage.

## VI.   CONCLUSION

This action involves a local environmental incident affecting only Bucks County, Pennsylvania residents, against at least one in-state defendant who was plausibly alleged to have played a significant role. CAFA's local controversy exception was designed for cases like this. *See Kaufman*, 561 F.3d at 149. Plaintiffs have met their burden, and Defendants have not shown fraudulent joinder. Accordingly, the Court lacks subject matter jurisdiction under CAFA, and this case will be remanded to Philadelphia County Court of Common Pleas.

BY THE COURT:

_____
Hon. Mia R. Perez